# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### DOCKET NO. 3:10-cv-398-W

| | | |
|---|---|---|
| THOMAS ROBINSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AFFINIA GROUP, INC. D/B/A | ) | **ORDER** |
| WIX FILTRATION PRODUCTS | ) | |
| DIVISION, AND WIX FILTRATION | ) | |
| CORP LLC, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

THIS MATTER is before this Court on Defendants' Motion for Summary Judgment (Doc. No. 20). This motion has been fully briefed by the parties (Docs. Nos. 22, 23) and is now ripe for consideration. For the reasons that follow, the motion is GRANTED.

## I. BACKGROUND

Plaintiff filed this matter against Defendants as his former employers alleging wrongful termination in violation of the Fair Labor Standards Act ("FLSA") and North Carolina public policy. This is the third suit Plaintiff has filed in this court against Defendants concerning his employment. See Robinson v. Spicer, 3:04-cv-469 (W.D.N.C.) ("Robinson I"); Robinson v. Wix Filtration Corp., LLC., 3:07-cv-414 (W.D.N.C.) ("Robinson II"). Earlier in the case, Defendants filed a motion to dismiss, claiming that the instant case was barred by the doctrine of res judicata. In ruling on Defendants' motion to dismiss, the Court set forth the procedural background of this case, including the facts concerning two prior related suits involving these parties. See Doc. No. 13. The facts as set forth in that order are hereby incorporated by reference and adopted as if fully set forth herein. Ultimately, in that order, the Court noted the limited purpose for which this case could proceed.

Specifically, Plaintiff could only raise claims based on "new activities arising after the second suit, namely, that Plaintiff carried out a legally protected activity by filing the second suit, and that Defendant retaliated against Plaintiff for engaging in that behavior . . . ." (Doc. No. 13, p. 6).

Although Plaintiff's brief relies largely on allegations already decided in his prior lawsuits, only the facts occurring after the second lawsuit are relevant to the instant motion. Nevertheless, keeping in mind the Court's prior ruling, the Court briefly summarizes the facts as a whole to provide context for the issues raised by Defendants' motion.

Beginning in approximately 1981, Defendant Wix Filtration Corp, LLC, employed Plaintiff as a telephone technician. On September 9, 2004, Plaintiff filed suit (Robinson I) against "Dana-Spicer, Inc., d/b/a Wix Filtration Corporation" alleging claims under FLSA for failure to pay overtime. The parties settled that lawsuit in July 2005. Wix subsequently entered into a Master Service Agreement with Electronic Data Systems Corporation ("EDS") to outsource certain technology and communication jobs. Plaintiff's job function was specifically addressed in an addendum to the Master Services Agreement and provided a yearly service request for telephone support that Defendants reviewed and renewed annually. Defendants' outsourcing of Plaintiff's position became effective August 31, 2005. Plaintiff contends he remained jointly employed by both Defendants and EDS after the outsourcing occurred. Defendants disagree and assert that the outsourcing contract entered into with EDS resulted in Plaintiff and other similarly situated employees being hired as at-will employees by EDS such that Defendants no longer employed Plaintiff. (See Affidavit of Kay Teixeira, Doc. No. 20-3, p. 2).

In 2007, Plaintiff filed a second suit (Robinson II) against "Wix Filtration Corporation;" "Dana-Spicer, Inc,. d/b/a Wix Filtration Products Division;" and "Affinia Group, Inc., d/b/a Wix Filtration Products Division" alleging Defendants decided to outsource his position, which he

-2-

asserted resulted in the termination of his employment, in retaliation for Plaintiff's filing of the first suit–Robinson I.  The court granted summary judgment for Defendants in that case, in part based on uncontroverted facts after Plaintiff filed no opposition to the motion for summary judgment,[1] (see Doc. No. 20, 3:07-cv-414), and the Fourth Circuit Court of Appeals affirmed judgment for Defendants in a published decision, Robinson v. Wix Filtration Corp.,LLC, 599 F.3d 403 (4th Cir. 2010) (affirming trial court's decision denying Plaintiff's motion to alter or amend judgment). Contrary to Plaintiff's overly-thorough discussion in his brief of the facts surrounding the decision to outsource his job, Defendants' determination to outsource certain positions, including Plaintiff's, is not an issue before this Court at bar, as these arguments were, in substance, rejected by the court in Robinson II.

In early 2009, almost one and a half years after Plaintiff filed Robinson II, Defendants decided to not renew part of their outsourcing contract with EDS, specifically the addendum that included, among others, Plaintiff's position.  Defendants contend this decision was made at the corporate level due to a change in telephone systems, which eliminated the need for certain telecommunication services through EDS.  Doc. No. 20-3, p. 4.  Subsequently, EDS terminated Plaintiff's employment.  Other employees who had been employed with EDS but had previously worked with Defendants were also terminated after Defendants did not renew the outsourcing contract.  Some of those employees reapplied for positions with and were hired by Defendants.

---

[1]Notably, in that case, Plaintiff's counsel failed to respond to Defendant's motion for summary judgment. The court therefore considered the facts to be undisputed, but nevertheless, in accordance with Custer v. Pan American Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993), still reviewed the evidence as part of its analysis concluding that Defendant was entitled to judgment as a matter of the law.  See 3: 07-cv-474, Doc. No. 20, pp. 4-5, 7.

-3-

Plaintiff received a separation package from EDS following his termination. (Doc. No. 20-6). As part of that agreement, Plaintiff received a lump sum of money in exchange for a release of claims against EDS and other conditions.

Plaintiff filed the instant suit against these Defendants,[2] alleging wrongful termination under both federal and state law based on the assertion that Defendants' decision to terminate the outsourcing contract for certain telecommunications positions occurred in retaliation for Plaintiff's filing of the second suit. Defendants have moved for summary judgment.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)(2011). A material fact is one that could lead to judgment in favor of one party or another. Anderson v. Liberty Lobby Inc., 477 U.S. 244, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. When the movant supports its motion for summary judgment by affidavits, the adverse party's response must be supported by affidavits or as otherwise provided by Rule 56 and must set forth specific facts showing that there is a genuine dispute for trial. Id. at 249-50.

Courts, in considering motions for summary judgment, view the facts and take all the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir, 1990). Summary judgment is thus proper where "the record taken

---

[2] EDS is not and was never a party to this lawsuit.

-4-

as a whole could not lead a rational trier of fact to find for the non-moving party . . . . " Matsushita
Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

### III. ANALYSIS

Plaintiff's complaint sets forth two causes of action: (1) retaliation in violation of the Fair
Labor and Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3); and (2) wrongful termination in violation
of North Carolina public policy, including the state's Wage and Hour Act and Fair Labor Standards
Act.  Defendants move for summary judgment on both counts.

### A.  Retaliation under FLSA

Under 29 U.S.C. § 215(a)(3), it is unlawful "to discharge or in any other manner discriminate
against any employee because such employee has filed any complaint or instituted or caused to be
instituted any proceeding under or related to this chapter, or has testified or is about to testify in any
such proceeding . . . ." A plaintiff asserting a claim for retaliation under this statute has two methods
to establish his case.  A plaintiff may utilize the "mixed-motive" approach by presenting  "direct or
circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible
factor . . . motivated the employer's adverse employment decision." Diamond v. Colonial Life &
Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005)(summarizing status of case law concerning
"mixed-motive" method of proof in light of both Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)
(plurality opinion), and Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003)).  "Alternatively, a plaintiff
may 'proceed under [the McDonnell Douglas] "pretext" framework, under which the employee,
after establishing a prima facie case of discrimination, demonstrates that the employer's proffered
permissible reason for taking an adverse employment action is actually a pretext for
discrimination.'" Diamond, 416 F.3d at 318 (alteration in original)(quoting Hill v. Lockheed Martin
Logistics Management, Inc., 354 F.3d 277, 285(4th Cir.2004) (en banc)).

-5-

Here, Plaintiff has failed to provide either direct or circumstantial evidence sufficient to show that his termination, which occurred after Defendants decided to not renew their contract with EDS, was motived by an impermissible factor such as retaliation.  Plaintiff has not identified any statements made by decision-makers regarding his termination in 2009 to establish evidence of retaliation as a result of his filing of the second suit.  Plaintiff's reference to a handful of comments that occurred in 2004 prior to Defendants' outsourcing of Plaintiff's job and several years prior to the 2009 decision to end the outsourcing contract are irrelevant for purposes of this case.  They provide no insight as to the motivation or reasons for Plaintiff's termination.  Accordingly, the pretext approach as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies.

Under the three-prong analysis set forth in McDonnell Douglas, a plaintiff must first make out a prima facie case.  411 U.S. at 802.  Then, the burden shifts to the employer to articulate "some legitimate, nondiscriminatory reason" for the allegedly discriminatory action.  Id.  Finally, if the employer satisfies this burden of production, the presumption of discrimination no longer exists, and the plaintiff must show that the employer's stated reason is not its true reason, but is instead a pretext for discrimination.  Id. at 804; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

1.      Prima Facie Case

Here, in order to establish a prima facie claim of retaliation under the FLSA, Plaintiff must show that "(1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action."  Darveau v.

-6-

Detecon, Inc., 515 F.3d 334, 340 (4th Cir. 2008) (citing Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir.2000); Conner v. Schnuck Mkts., Inc., 121 F.3d 1390, 1394 (10th Cir.1997)).

The first element is easily satisfied because it is undisputed that Plaintiff engaged in protected activity under FLSA by filing his second suit alleging wrongful discharge.[3] The other two elements are more troubling. Although it is uncontroverted that Plaintiff suffered an adverse action by virtue of his termination, it remains unclear–as both parties have presented conflicting evidence–as to whether Plaintiff suffered an adverse action "by" these Defendants, as opposed to an adverse action by EDS. Considering the circumstances and evidence as a whole and giving all inferences from the evidence to Plaintiff, Plaintiff appears to be able to demonstrate that Defendants and EDS jointly employed him. See generally 29 C.F.R. § 791.2(b); Quinteros v. Sparkle Cleaning, Inc., 532 F.Supp.2d 762, 773-75 (D.Md. 2008)(discussing tests articulated by the Fourth Circuit and other circuits for purposes of determination of joint-employment); see also Schultz v. Capital Int'l Sec. Inc., 466 F.3d 298, 305-06 (4th Cir.2006)(discussing joint employment relationship and liability under FLSA). It follows that Plaintiff can satisfy the second prong of the prima facie case – that the evidence tends to show that Plaintiff suffered an adverse action (termination) by one of his employers (Defendants).

Turning to the last element of the prima facie case, Defendants contend Plaintiff cannot show a causal connection because there is no close temporal relationship between Plaintiff's protected activity (the filing of the second suit) and Plaintiff's termination. Here, Plaintiff filed his second suit on August 29, 2007, and continued to prosecute his claims against Defendants through the appellate stage, which ended on March 29, 2010, with the issuance of the Fourth Circuit's opinion against

---

[3]As discussed below, the participation in ongoing litigation with Defendants might also constitute protected activity.

Plaintiff. Plaintiff's termination on February 27, 2009, occurred in the midst of the litigation of the second suit. The law clearly recognizes that "a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004)(citing Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989)). Price also recognized that "generally the passage of time . . . tends to negate the inference of discrimination." 380 F.3d at 213 (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (citing cases); Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir.1998)). The Fourth Circuit has explained:

> Generally speaking, *temporal evidence* alone cannot establish causation for a prima facie case of retaliation, unless the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" was "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (internal quotation marks omitted). Clark does not establish the outer boundaries for temporal proximity to be considered "very close," but it does cite examples of insufficient temporal proximity-evidence that the employer took the adverse action three or four months after the protected activity cannot alone establish causation. See id. at 273-74. After the Clark decision, we concluded that a ten-week gap between protected activity and termination "gives rise to a sufficient inference of causation" but was "sufficiently long so as to weaken significantly the inference of causation between the two events." King v. Rumsfeld, 328 F.3d 145, 151 & n. 5 (4th Cir.), cert. denied, 540 U.S. 1073, 124 S.Ct. 922, 157 L.Ed.2d 742 (2003).

Shields v. Fed. Express Corp., 120 Fed. Appx. 956, 963 (4th Cir. 2005)(emphasis in original). Neither the Supreme Court nor the Fourth Circuit has drawn a bright-line rule as to how long is too long.

Even more problematic is ascertaining whether more than one protected activity occurred, and if so, what specific protected act should be used for determining temporal proximity to the adverse action; for example, whether it is the filing of the complaint with the EEOC or the filing of

-8-

a complaint in a court. Generally, courts seem to look to the last protected activity that occurred

prior to the adverse action. See King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003)("King's filing

of the EEO complaint [in Title VII case] was protected activity, and his termination indisputably

constituted adverse employment action. Moreover, that his termination came so close upon his filing

of the complaint gives rise to a sufficient inference of causation to satisfy the prima facie

requirement."); Martin v. Merck & Co., Inc., 446 F.Supp.2d 615 (W.D.Va. 2006) (noting, in Title

VII case, the adverse action occurred "well over a year after the plaintiffs filed the instant lawsuit

. . . , the nearest preceding protected activity."); but see Ball v. Memphis Bar-B-Q Co., Inc., 228

F.3d 360, 364 (4th Cir. 2000)(declining to extend FLSA's prohibition against retaliation to

"intra-company complaints or to potential testimony in a future-but-not-yet-filed court proceeding").

The law is especially unclear in cases like the one at bar where the protected activity involves

a prior suit. Some courts have extended the protected activity "start time" by using the resolution

date of the previous litigation (as opposed to the date the complaint was filed) for purposes of

determining temporal proximity with the adverse action. See generally, Jackson v. Mayor and City

Council of Baltimore City, 2009 WL 2060073 *8 (D.Md. 2009)(collecting cases from various

districts in the context of Title VII and ADEA cases)(citations omitted). The Court, on its own as

Plaintiff has cited to no authority on this temporal proximity issue notwithstanding it is the sole basis

for satisfying the causation requirement, has found a handful of cases where a court did not look to

the filing of a complaint as the last protected act, but instead recognized a distinction for ongoing

litigation. See id. Limiting the analysis to FLSA cases[4] in this circuit, several district courts have

---

[4]While consideration of causation and temporal proximity in Title VII cases is useful for general purposes,
it becomes more difficult to rely on these cases in determining what constitutes protected activity since that is
defined by statute. See generally, Darveau, 515 F.3d at 342 (noting import of and traditional reliance on Title VII in
cases interpreting FLSA and comparing certain definitions within the statutes). For example, in identifying
protected activities and assessing their proximity to the adverse action, protected activities, as outlined in the statute,

considered the end date for litigation as the start date, or trigger, for protected activity–at least for

purposes of allowing an inference of causal connection based on temporal proximity.  In an

unpublished FLSA case out of the Eastern District of Virginia, Hart v. Hanover County School Bd.,

2011 WL 652524 (E.D.Va., 2011), the court–without any discussion as to its reason for doing

so–considered the date of settlement of prior litigation as the start date for determining temporal

proximity.  Ultimately, the court held that the difference in time between the settlement and the date

of adverse action (approximately a year and a half) was too long to show a causal connection.  Id.

at *3.  In the Jackson case cited above, also an unpublished case, the District of Maryland

thoroughly analyzed the relevant considerations, conducting both a statutory and case law analysis,

and concluded that "Given the broad remedial purposes of the FLSA, I interpret the retaliation

provision such that from the time [the plaintiffs] filed a complaint in federal court until they entered

into a settlement agreement with the [defendant], their testimony in the proceeding was pending or

anticipated." Jackson, 2009 WL 2060073 *7-8.  This ongoing litigation presented the potential for

the plaintiff to testify and , the court ruled, fell within the protected activity covered by the FLSA

statute.  Jackson ultimately held that, "given the temporal proximity between the settlement of the

previous case [in January 2008] and Plaintiffs' termination [in February 2008], . . . Plaintiffs have

---

include "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing."  Jones v. Calvert Group, Ltd., 2010 WL 5055790 *8 (D.Md. 2010)(citing Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir.1998) (citing 42 U.S.C. § 2000e-3(a))).  Here, turning to the text of the statute upon which this action is based, 29 U.S.C. § 215(a)(3), the relevant portion provides that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . . ."  Thus, the statute sets forth several opportunities for protected activity, including the filing of a complaint, the institution of a proceeding, or the giving of testimony in any such proceeding.  On one hand, a reasonable interpretation of the reference to "is about to testify" suggests that ongoing litigation could provide a basis for protected activity.  On the other hand, unlike 42 U.S.C. § 2000e-3(a), the FLSA statute does not include protection for "participation in any manner . . . ."  Other than for purposes of mentioning it here to show the comparison between Title VII protected activity and FLSA protected activity, the Court specifically declines to engage in the statutory interpretation or conclusively decide whether the statute contemplates the continued prosecution of litigation as protected activity where the parties have neither raised nor briefed the issue.

-10-

satisfied their minimal burden of establishing a prima facie case of retaliation." Id. This Court is unaware of any precedent out of the Fourth Circuit Court of Appeals addressing the issue of whether protected activity under FLSA includes ongoing litigation through the time of settlement or disposition of a pending matter.

The resolution of this legal quagmire is dispositive here because Plaintiff presents no other evidence of retaliatory animus. The two years that separate Plaintiff's filing of the second suit and the adverse action seem too attenuated to suggest a causal connection. See Breeden, 532 U.S. at 273-74 (holding 20 months is too long to infer causality); Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998) (thirteen month interval between protected activity and termination insufficient to prove causation); Parrott v. Cheney, 748 F.Supp. 312 (D.Md.1989) (holding that less than four months does not support an inference), aff'd per curiam, 914 F.2d 248 (4th Cir.1990); Smith v. Computer Task Group, Inc., 568 F.Supp.2d 603, 614-15 (M.D.N.C. 2008)(collecting cases analyzing temporal proximity and causation for various employment-related causes of action). Thus, using the filing of the complaint as the trigger date, the Court would be inclined to conclude that no reasonable person could find that Plaintiff's filing of his complaint and the termination decision were close enough in time to infer a causal connection. If, however, the Court considered the fact the parties were engaged in ongoing, disputed litigation at the time the adverse action occurred, then Plaintiff would benefit from the inference of a causal connection and therefore satisfy the prima facie requirements. Without a finding of a causal connection based on temporal proximity, Plaintiff has provided no other evidence to otherwise demonstrate the causation prong in the prima facie case. Recognizing this somewhat murky area of law and also acknowledging that the evidence fails to conclusively show the requisite causal connection, the Court will, for purposes of analysis here,

-11-

*presume without deciding* that Plaintiff can satisfy the less onerous burden of making a prima facie case of causality.

2.      Defendant's Legitimate, Nondiscriminatory Reason

Presuming Plaintiff can make out a prima facie case of retaliation, the Court turns to whether Defendants assert a legitimate, nondiscriminatory reason for the decision that resulted in Plaintiff's termination.  "This burden, however, is a burden of production, not persuasion." <u>Holland v. Wash. Homes, Inc.</u>, 487 F.3d 208, 214 (4th Cir. 2007).  The Supreme Court has explained,

> To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.  The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the  prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.

<u>Tx. Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 255 (1981).  Defendant's burden is low such that it "need *not* persuade the court that it was actually motivated by the proffered reasons" so long as it otherwise articulates a legitimate reason that is supported by the evidence. <u>Id.</u> (Emphasis added).    The parties agree Plaintiff's termination resulted from Defendants' non-renewal of a portion of the outsourcing contract with EDS.  Defendants contend this occurred following a company-wide business and financial decision made at the corporate level to switch from an antiquated telephone system to a more modern, voiceover IP telephone system.  Accordingly, Defendants no longer needed the telecom/telecommunication services outsourced to EDS and provided by employees such as Plaintiff.  The evidence supports this justification offered by Defendants.  Ron Masters, who holds a management position with Defendants as "IT Director UHG," submitted a sworn affidavit supporting Defendants' proffered reason. (Doc. No. 20-4).  In it, he avers:

-12-

[T]he decision not to renew the agreement with EDS for telecom/telecommunication services was made at the corporate level as a business decision in part because many Affinia/WIX division offices has [sic] switched to a voice-over IP telephone system[,] which eliminated the need for telecom/telecommunication services through EDS. Upon information and belief, all Affinia/WIX offices will convert to a voice-over IP telephone system in the near future. This switch is imminent in the Gastonia division like all other offices.

(Doc. No. 20-4, p. 3 ¶ 23).[5]   The deposition testimony of Defendants' 30(b)(6) corporate representative Fred Dingraudo, submitted by Plaintiff in opposition to the instant motion, also indicates that Defendants planned to move to a more modern telephone system:

[W]e made a conscious decision after we outsourced to EDS back in 2005 I believe that was the date, I'm not sure, that's an estimate that the phones really belonged with the network group because of the shift in technology. You know, Affinia was based on analog – old-time analog phone system, and we wanted to move them to a voiceover IP, which is really that strategy I would have done with the former CEO.

(Doc. No. 22-4, p. 3-4). Dingraudo continued to testify that such decision was made after the outsource but probably sometime in 2005. (Doc. No. 22-4, p. 4). While some locations have completed the transition, others have not, including the Gastonia location where Plaintiff worked, although Defendants contend such transition is forthcoming. See Doc. No. 20-9, p. 11. The evidence supports Defendants' legitimate nondiscriminatory reason for the termination of the contract with EDS that subsequently resulted in Plaintiff's termination.

     3.     Pretext

---

[5]Defendants also submitted other evidence concerning the reasons for the non-renewal including the affidavits from Kay Teixeira and Dan Carter, as well as deposition testimony from Cheryl Kendrick. (Doc. No. 20-1, pp. 16-17; see Exhibits 1, 3, and 7). The evidence submitted, however, constitutes hearsay because it purports to offer testimony based on rumors or information verbally communicated from third parties. In other words, Defendants rely, in part, on statements made by someone other than the declarant to prove the truth of the matter asserted. Such evidence is inadmissible. See Maryland Highways Contractors Ass'n v. Maryland, 933 F.2d 1246, 1251 (4th Cir.1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."); see also Greensboro Prof'l Fire Fighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir.1995) (proffered evidence of un-attributed rumors is inadmissible hearsay; such evidence is neither admissible at trial nor supportive of an opposition to a motion for summary judgment). Accordingly, the Court has not relied on such evidence in its analysis.

Now that Defendants have sufficiently rebutted the presumption of retaliation, in order to withstand summary judgment for Defendants, Plaintiff must show that Defendants proffered reason is pretextual. The Fourth Circuit has summarized the case law setting forth Plaintiff's requisite burden:

> The Supreme Court has explained that "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). In applying St. Mary's, we have held "that to survive a motion for summary judgment under the McDonnell Douglas paradigm the plaintiff must do more than merely raise a jury question about the veracity of the employer's proffered justification. The plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action." Vaughan v. The Metrahealth Cos., 145 F.3d 197, 202 (4th Cir.1998).

Smith v. First Union Nat. Bank, 202 F.3d 234, 249 (4th Cir. 2000). "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir.1989) (citation omitted).

Plaintiff argues Defendants' proffered explanation is false. Specifically, Plaintiff contends that the antiquated telephone system continues to operate as is, and the alleged modernization has not occurred. As noted above, Defendants concede they have not *yet* converted their antiquated telephone system to a more modern system in *all* plants, but have moved forward with transitioning over many of their locations. (Doc. No. 23-2, pp. 2-3). Defendants submit such "switch is imminent in the Gastonia division like all other offices." (Doc. No. 20-3, p. 4; Doc. No. 20-4, p.3).

Plaintiff also points to Mr. Dingraudo's testimony where he agreed to the question that "the long-term goal of going to the VIOP phone system, that was not a factor in the decision to terminate the service request for phone services." (Doc. No. 22-4, p. 11). While Mr. Dingraudo's answer read

-14-

in isolation conceivably casts doubt on the veracity of Defendants' justification, his testimony is extremely problematic for Plaintiff. Most troubling for Plaintiff is Mr. Dingraudo's testimony that *Defendants* did not cancel the contract, but instead the *outsourcer* (EDS)[6] actually "no longer wanted to provide that service." (Doc. No. 22-4, p. 11). If true, then without being the actor or the party responsible for ending the outsourcing relationship, Defendants could not have possibly been retaliating against Plaintiff. It is also worth mentioning that Mr. Dingraudo consistently and frequently qualified the limitations on his answers as being outside the realm of his knowledge. He stated numerous times, both before and after responding to counsel's question, that "We may have. I don't know," or "I really can't answer it," or "Again, this is to the best of my knowledge. . . . I mean, I don't know." (Doc. No. 22-4, pp. 11-15).

Without weighing the credibility of Mr. Dingraudo's testimony, which the Court cannot do at this stage, the Court has serious doubts as to his personal knowledge for those portions of the testimony relied on by Plaintiff–particularly where Mr. Dingraudo testified he was not part of the decision to end the outsourcing contract.

Even if the Court were persuaded by Plaintiff's arguments on the veracity of Defendants' stated reason for termination, Plaintiff still fails to show pretext. The Court is not persuaded by Plaintiff's citation to a few instances where Defendants rehired some employees who were terminated by EDS following the non-renewal of the contract, but did not rehire Plaintiff.

The remaining bulk of Plaintiff's evidence to show pretext consists of his own statements in prior litigation (including verified complaints), his responses to interrogatories, his deposition

---

[6]Technically, at this Hewlett Packard ("HP") had purchased EDS, so it was HP that, according to Mr. Dingraudo, wanted to end the relationship. Nevertheless, for purposes of this analysis, it is irrelevant what the name of the company was at the time, but more important that it was the outsourcee–and not Defendants as the outsourcer–that Mr. Dingraudo contends terminated the outsourcing contract.

-15-

testimony, and his affidavit.  (See Doc. No.  22, Exhibits 1, 2, 8, 10, 13, 14, 15).  Each of these, considered separately or as a whole, constitute little more than bare assertions of discrimination and fail to rise to the evidentiary level sufficient to show retaliation.  Williams, 871 F.2d at 456.  Moreover, as noted above, the majority of this "pretext evidence" purports to relitigate issues already decided, either in prior cases or by this Court.  See Doc. No. 13.  This, Plaintiff cannot do. See id. (discussing the doctrine of res judicata as it applies to Plaintiff's prior cases and this case).

In sum, Plaintiff simply has no evidence to show retaliation other than the timing of the events - specifically, that the non-renewal of the outsourcing contract, which resulted in Plaintiff's termination, took place simultaneously with Plaintiff's prosecution of the alleged FLSA claims in his previous suit.  Other than this temporal proximity argument, Plaintiff has not presented any admissible evidence to show a retaliatory animus by Defendants.  Defendants, on the other hand, provide evidence showing the decision was based on a company-wide modernization agenda and resulted in the termination of other employees aside from Plaintiff.  See Doc. No. 20-3, p. 4; Doc. No. 20-9, p. 16; Doc. No. 20-10, pp. 11-12.  Plaintiff points to no evidence to show such explanation was a pretext for discrimination.  Therefore, Defendants are entitled to summary judgment on Plaintiff's FLSA claim.

**B.      Wrongful Termination in Violation of North Carolina Public Policy**

Defendants also move for summary judgment on Plaintiff's state law claim for wrongful termination.  Generally, "an employee-at-will has no claim for relief for wrongful discharge . . . [because] [e]ither party to an employment-at-will contract can terminate the contract at will for no reason at all, or for an arbitrary or irrational reason.'"  Combs v. City Elec. Supply Co.,  690 S.E.2d 719, 723 (N.C. App. 2010) (quoting Tompkins v. Allen, 421 S.E.2d 176, 178 (N.C. App. 1992) (citations omitted)).  In Coman v. Thomas Mfg. Co., 381 S.E.2d 445 (N.C. 1989), the North

-16-

Carolina Supreme Court carved out the public policy exception to this rule. There, the court ruled that, " '[W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy.' " Id. at 447 (alterations in original) (quoting Sides v. Duke Univ., 328 S.E.2d 818, 826 (N.C.App. 1985)). Similar to the burden under FLSA, the employee bears the burden of proving that his termination resulted for a reason that violates public policy and may do so by showing that: "(1) [he] engaged in a protected activity, (2) the employer took adverse action, and (3) there existed a causal connection between the protected activity and the adverse action." Salter v. E & J Healthcare, Inc., 575 S.E.2d 46, 51 (N.C. App. 2003) (quoting Brewer v. Cabarrus Plastics, Inc., 504 S.E.2d 580, 586 (N.C. App. 1998)).

In the case at bar, Plaintiff cites to N.C. Gen. Stat. § 95-241(a)(1)(b) to support his claim that the filing of Robinson II constitutes protected activity. That statute provides that "no person shall discriminate or take any retaliatory action against an employee because the employee in good faith . . . file[s] a claim or complaint . . . with respect to . . . Article 2A [Wage and Hour Act] . . . ." N.C. Gen. Stat. § 95-241(a)(1)(b). Plaintiff contends his second suit, which alleged claims for wrongful termination for violation of public policy and retaliation, falls under the protected activity encompassed by North Carolina's Wage and Hour Act of Article 2A ("NCWHA"). Defendants argue Plaintiff's filing of Robinson II does not constitute protected activity under North Carolina law.

The North Carolina Supreme Court has recognized that protected conduct under N.C. Gen. Stat. § 95-241 includes retaliation for the assertion of rights under the North Carolina Wage and Hour Act. Amos v. Oakdale Knitting Co., 416 S.E.2d 166, 170 (N.C. 1992) (" We hold therefore that, taking plaintiffs' allegations as true, defendants violated the public policy of North Carolina

-17-

by firing plaintiffs for refusing to work for less than the statutory minimum wage."); <u>Brown v. Sears</u> <u>Automotive Center</u>, 222. F.Supp.757, 762 n.8 (M.D.N.C. 2002) ("REDA also prohibits retaliation against employees who assert complaints pursuant to . . . the Wage and Hour Act, N.C. Gen. Stat. 95-25.1 et seq.").

North Carolina law provides that certain provisions of the NCWHA, including the statute that pertains to overtime (§ 95-25.4), does not apply if the employee works for "an enterprise engaged in commerce or the production of goods for commerce as defined in the FLSA." N.C. Gen. Stat. § 95-25.14(a)(1) . Courts have recognized that "if a defendant is covered by the FLSA, it is exempt from the state [Wage and Hour Act] statute." <u>Spencer v. Hyde County</u>, 959 F.Supp. 721, 728 (E.D.N.C. 1997) (citing <u>Amos v. Oakdale Knitting Co.</u>, 331 N.C. 348, 416 S.E.2d 166 (1992) ("Businesses covered by the FLSA are exempt form the state Wage and Hour Act."); N.C. Gen.Stat. § 95–25.1 (citing <u>Amos</u> in the annotations for the proposition that businesses covered by the Fair Labor Standards Act are exempt from the NCWHA)).

Here, Plaintiff alleges that FLSA governs at least some his claims against Defendants. <u>See</u> Doc. No. 1-1, ¶¶ 24, 54. Such assertion is consistent with Plaintiff's prior suits. <u>See</u> <u>Robinson I</u>, Doc. No. 1; <u>Robinson II</u>, Doc. No. 1-1. Therefore, under North Carolina law, it appears that the NCWHA does not protect Plaintiff, and accordingly, he cannot show that any public policy provided therein protects him from discharge. <u>See</u> <u>Hedrick v. Southern States Co-op, Inc.</u>, 2010 WL 3834631 *10 (E.D.N.C. 2010) (concluding "plaintiff's wrongful discharge claim is fatally flawed because the allegations of the complaint, by establishing that he is exempt from the NCWHA, fail to show that any public policy that protected him from discharge or therefore that his discharge violated any public policy.") (citing <u>Jarman v. Deason</u>, 618 S.E.2d 776, 778 (N.C. App. 2005) (dismissing complaint for wrongful termination in violation of public policy against age discrimination in

-18-

employment for failure to state a claim where plaintiff did not fall within state statute declaring anti-discrimination policy); Considine v. Compass Grp. USA, Inc., 551 S.E.2d 179, 183-84, aff'd, 354 N.C. 568, 557 S.E.2d 528 (N.C. App. 2001) (dismissing complaint for wrongful termination in violation of public policy where plaintiff failed to allege in the complaint that "defendant's conduct [in discharging plaintiff] violated any explicit statutory or constitutional provision"); accord Combs v. City Elec. Supply Co., 690 S.E.2d 719, 723 (N.C. App. 2010) (reversing directed verdict dismissing wrongful discharge claim in violation of public policy where plaintiff presented more than a scintilla of evidence that alleged statutory violation underlying his claim occurred)).

Although Plaintiff argues otherwise (to his detriment, as explained above), the Court notes that it appears to some extent, Plaintiff's filing of Robinson II was not an assertion of rights under the Wage and Hour Act. In fact, the complaint contained no such cause of action. Instead, Robinson II only mentioned the NCWHA as the underlying basis for his claim of wrongful discharge in violation of state public policy. Plaintiff alleged Defendants violated state public policy by retaliating against him for his filing of his previous complaint (Robinson I), which notably, also did *not* assert a violation of the Wage and Hour Act. (See Robinson I, Doc. No. 1). Put another way, in Robinson II, Plaintiff was not pursuing benefits under to the North Carolina Wage and Hour Act (Chapter 95, Article 2A of the North Carolina General Statutes); he was pursuing benefits under the Retaliatory Employment Discrimination Act (Chapter 95, Article 21), which protects against retaliation for pursuing benefits under, *inter alia*, the North Carolina Wage and Hour Act.

The Court is unaware of any case– and Plaintiff has not pointed to any–where North Carolina courts have recognized that filing a law suit alleging retaliation for filing the underlying suit for retaliation (as distinguished from an original suit alleging a violation of the Wage and Hour Act upon which a subsequent case for retaliation might be based) is protected activity. Nothing in North

-19-

Carolina's Retaliatory Employment Discrimination Act supports such a conclusion. Plainly stated, Plaintiff requests this Court to decide for the first time that retaliation for alleging retaliation constitutes protected activity sufficient to state a claim for wrongful discharge in violation of public policy. Without direction from the North Carolina courts or statutes, the Court declines to extend such protection. Defendants are therefore entitled to summary judgment on Plaintiff's state law claim for wrongful discharge.

### III. Conclusion

For the reasons stated above, Defendants are awarded summary judgment on Plaintiff's claims for retaliation under FLSA and for wrongful discharge in contravention of North Carolina public policy.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 20) is GRANTED. Defendants' Motion to Continue Trial is hereby dismissed as moot. The Clerk is respectfully directed to CLOSE THE CASE and terminate all deadlines.

IT IS SO ORDERED.

Signed: September 2, 2011

Graham C. Mullen
United States District Judge